UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                           NO. 12-1

GERARD J. HOWARD ET AL.                          SECTION "F"

ORDER AND REASONS

In a status conference held on December 5, 2012, and as documented in the Court's resulting minute entry, the Court ordered that it will select an anonymous jury for trial in this case. The Court now gives the reasons for its decision.

Background

On October 18, 2012, the Federal Grand Jury returned a twenty-two count superceding indictment, charging defendants Nakia Hankton, Shirley Hankton, Telly Hankton, a/k/a "Third" and "Wild," Thomas Hankton, a/k/a "Squirt," Troy Hankton, George Jackson, a/k/a "Black," Walter Porter, a/k/a "Urkel" and "Moonie," Derrick Smothers, a/k/a "Dump," and Terrell Smothers, with various violations of federal laws. The indictment alleges that beginning on a date unknown, but prior to January 1996, and continuing to the date of the superceding indictment, defendants were part of a criminal enterprise that historically encompassed the Uptown Central City area of New Orleans, primarily

1

concentrated in the area bordered by Jackson Avenue, St. Andrew Street, Simon Bolivar, and Oretha Castle Haley.  Specifically, the superceding indictment charges the defendants as follows:

- **Count 1: RICO Conspiracy**
    Defendants Nakia Hankton, Shirley Hankton, Telly Hankton, Thomas Hankton, Troy Hankton, George Jackson, Walter Porter, Derrick Smother, and Terrell Smothers were charged with conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, consisting of multiple acts involving murder, bribery, trafficking in controlled substances, possession with the intent to distribute controlled substances, including cocaine base (crack cocaine), cocaine hydrochloride (powder cocaine), heroin, and marijuana.[1]

- **Count 2: Conspiracy to Distribute Controlled Substances**
    Defendants Nakia Hankton, Shirley Hankton, Telly Hankton, Thomas Hankton, Troy Hankton, George Jackson, Derrick Smothers, and Terrell Smothers did knowingly and intentionally combine, conspire, and confederate and agree with each other to distribute 280 grams or more of cocaine base (crack cocaine), five kilograms or more of cocaine hydrochloride (powder cocaine), one kilogram or more of heroin, and a quantity of marijuana.

- **Count 3: Conspiracy to Possess Firearms**
    Defendants Andre Hankton, Nakia Hankton, Telly Hankton, Thomas Hankton, Troy Hankton, George Jackson, Kevin Jackson, Derrick Smothers, Terrell Smothers, and Walter Porter did knowingly and intentionally combine, conspire, confederate and agree with each other to, during and in relation to a crime of violence and a drug trafficking crime, to use, carry, and possess firearms in furtherance of a crime of violence and drug

---

[1] Notably, the indictment alleges 101 overt acts that were committed by the defendants in furtherance of the conspiracy and to accomplish the objects of the conspiracy.

trafficking.

- **Count 4: Conspiracy to Obstruct Justice**
  Defendant Walter Porter did knowingly and intentionally combine, conspire, confederate and agree with other persons, to corruptly obstruct, influence, and impede an official proceeding by attempting to cause K.E. to falsely claim that G.H. did not possess a firearm on June 23, 2007, but rather that K.E. possessed the firearm.

- **Count 5: Murder in Aid of Racketeering**
  Defendants Andre Hankton and Telly Hankton as consideration for the receipt of, and as consideration for a promise and an agreement to pay, and for the purpose of gaining entrance to and maintaining and increasing position in the enterprise, murdered Darnell Stewart.

- **Count 6: Causing Death Through the Use of a Firearm**
  Defendants Andre Hankton and Telly Hankton did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 7: Possession of a Short-Barreled Shotgun**
  Defendant Andre Hankton knowingly possessed a Winchester 20 gauge short-barreled shotgun, which is not registered to him.

- **Count 8: Murder in Aid of Racketeering**
  Defendants Telly Hankton, Walter Porter, and Kevin Jackson did murder Jesse Reed.

- **Count 9: Causing Death Through the Use of a Firearm**
  Defendants Telly Hankton, Walter Porter, and Kevin Jackson did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 10: Murder in Aid of Racketeering**
  Defendants Walter Porter and Thomas Hankton as consideration for the receipt of, and as consideration for a promise and an agreement to pay, and for the purpose of gaining entrance to and maintaining and increasing position in the

enterprise, murdered Hasan Williams.

- **Count 11: Causing Death Through the Use of a Firearm**
  Defendants Walter Porter and Thomas Hankton did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 12: Felon in Possession of a Firearm**
  Defendant Walter Porter, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce an unknown make and model of a firearm.

- **Count 13: Assault with a Dangerous Weapon in Aid of Racketeering**
  Defendants Thomas Hankton, Telly Hankton, and Walter Porter did commit an assault with a dangerous weapon on J.M.

- **Count 14: Use and Carrying of a Firearm During and in Relation to a Crime of Violence and a Drug Trafficking Crime**
  Defendants Thomas Hankton, Telly Hankton, and Walter Porter did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 15: Murder in Aid of Racketeering**
  Defendant Walter Porter as consideration for the receipt of, and as consideration for a promise and an agreement to pay, and for the purpose of gaining entrance to and maintaining and increasing position in the enterprise, murdered Curtis Matthews.

- **Count 16: Causing Death Through the Use of a Firearm**
  Defendant Walter Porter did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 17: Conspiracy to Commit Misprision of a Felony**
  Defendants Thomas Hankton, Netthany Schexnayder, and Sana Johnson did knowingly and willfully combine, conspire, and agree with each other to knowingly commit the crime of misprision of a

felony, having knowledge of the actual commission of felonies.

- **Count 18: Accessory After the Fact to Murder**
  Defendants Thomas Hankton, Netthany Schexnayder, and Sana Johnson, knowing that an offense against the United States has been committed, received, relieved, comforted, and assisted the offender, Telly Hankton, in order to hinder and prevent the offender's apprehension, trial, and punishment.

- **Count 19: Felon in Possession of a Firearm**
  Defendant Walter Porter, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce, ammunition and a Romarm 7.62 caliber semi-automatic assault rifle.

- **Count 20: Felon in Possession of a Firearm**
  Defendant Walter Porter, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce, ammunition and a model 17, 9 mm Glock semi-automatic handgun.

- **Count 21: Money Laundering Conspiracy**
  Defendants Telly Hankton, Thomas Hankton, and Shirley Hankton, did knowingly and intentionally combine, conspire, confederate and agree with each other to knowingly and willfully conduct and attempt to conduct financial transactions, which involved the proceeds of a specified unlawful activity.

- **Count 22: Perjury**
  Defendant Shirley Hankton, under oath and duly sworn, did knowingly and unlawfully and contrary to oath make certain material false statements to a United States Grand Jury.

In summary, over a period of at least sixteen years, and involving fourteen defendants, the indictment alleges charges of the most serious, wicked, and alarming nature; the murder of four individuals, assault with a deadly weapon, possession and

distribution of a significant quantity of various drugs (crack cocaine, powder cocaine, heroin, and marijuana), a variety of weapons offenses (a 20 gauge short-barreled shotgun, Romarm 7.62 caliber semi-automatic assault rifle, and 9 mm Glock semi-automatic handgun), money laundering, lying under oath, and obstruction of justice.

## Legal Standard

The Court, in considering the use of an anonymous jury in this case, has examined earlier precedent as a guide. The Fifth Circuit has explicitly stated that "'the use of an anonymous jury is constitutional when there is a strong reason to believe the jury needs protection and the district court takes reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected.'" United States v. Krout, 66 F.3d 1420, 1427 (5th Cir. 1995) (quoting United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994)) (internal quotation marks omitted). The Fifth Circuit has helpfully identified several factors that would justify the use of an anonymous jury:

1. The defendants' involvement in organized crime;
2. The defendants' participation in a group with the capacity to harm jurors;
3. The defendants' past attempts to interfere with the judicial process or witnesses;
4. The potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary

   penalties; and

5.  Extensive publicity that could enhance the possibility that the jurors' names would become public and expose them to intimidation and harassment.

Krout, 66 F.3d at 1427; see, e.g., United States v. Herrera, 446 F. App'x 409 (5th Cir. 2012)(upholding the district court's sua sponte order directing that the selected jury remain anonymous based on the Krout factors); United States v. Brown, 303 F.3d 582, 602-03 (5th Cir. 2002) (upholding the use of an anonymous jury after the district court found three of the five Krout factors present in the case). No one factor is dispositive; rather, the decision to empanel an anonymous jury should be made on the totality of circumstances. Brown, 303 F.3d at 602 (citing United States v. Branch, 91 F.3d 699, 724 (5th Cir. 1996)). Here it seems as though all the Krout factors are implicated.

### I. Discussion

 Based on the Krout factors, relevant case law, and the allegations against these defendants, the Court finds the use of an anonymous jury at trial is not only appropriate, but also quite necessary.

*A.*

 Under the first Krout factor, which considers the defendants' involvement in organized crime, the Court notes that the main thrust of the indictment here accuses fourteen defendants of engaging in organized crime for over a minimum

period of sixteen years, concealing at least $42.3 million in ill-gotten gain.[2]  During this time, the indictment alleges, among other things, that the defendants purchased and distributed significant quantities of drugs, including crack cocaine and cocaine powder, from sources in New Orleans and Houston.[3] Moreover, the defendants allegedly threatened (while armed with firearms) a source of supply and his family members over drug-trafficking disputes,[4] shot and killed several individuals who were believed to have stolen drugs,[5] and shot and killed witnesses and family members of witnesses.[6]  Based on the government's allegations, the Court cannot ignore that the defendants' involvement in organized crime is alleged to be both rooted and far-reaching.  See Herrera, 446 F. App'x at 410

---

[2] See Superceding Indictment at 33.

[3] For instance, the indictment alleges that sometime between 1998 to 2003, Telly Hankton purchased five to six kilograms of cocaine powder approximately *every two weeks* from a source of supply in the New Orleans area.  See id. at 9 (emphasis added).  Another example includes the allegation that between June 22, 2009 and February 3, 2011, Thomas Hankton purchased five to ten kilograms of cocaine powder on at least four separate occasions from a source of supply in Houston.  See id. at 14.  Yet another example in the indictment includes the allegation that sometime in 2008 Telly Hankton and an associate met with a drug source in Texas and paid him approximately *$120,000* for drugs.  See id. at 13.

[4] See id. at 13.

[5] See id. at 10.

[6] See id. at 14-16.

(involving six defendants who were all associated, in varying degrees, in a criminal drug enterprise in El Paso, Texas and certain West Texas cities); Cf. Brown, 303 F.3d at 602 (upholding an anonymous jury even though the first factor was not implicated).

*B.*

The Court considers the second and third Krout factors together, examining both the defendants' participation in a group with the capacity to harm jurors, and the defendants' past attempts to interfere with the judicial process and to intimidate witnesses. The Court finds that both factors are noticeably present based on the following allegations in the indictment, which indicate the defendants' potential to try to harm jurors and past attempts of judicial interference:

- On or about November 5, 1996, the indictment alleges that Thomas Hankton escaped arrest by New Orleans Police Officers by fleeing on a bicycle. See Superceding Indictment at 9.

- The indictment also alleges that between July 28, 2008 and March 7, 2009, Telly Hankton fled Orleans Parish and the State of Louisiana to avoid prosecution for the murder of Darnell Stewart. See id. at 14.

- On or about July 4, 2009, the indictment alleges that Walter Porter shot and killed Hasan Williams, a witness to the murder of Jesse Reed. See id. at 15.

- The indictment alleges that sometime in 2009 but after August 29, 2009, an associate of the defendants in Orleans Parish Prison called Derrick Smothers, at the direction of Telly Hankton (who was also in jail), and instructed Derrick Smothers to tell Thomas Hankton to kill witness, J.M. Walter Porter allegedly later shot

9

>     J.M.  See id. at 15.

- Sometime in 2011, but after February 3, 2011, the indictment alleges that Thomas Hankton offered to pay a witness to testify falsely at Telly Hankton's first trial for the murder of Darnell Stewart and to provide an alibi for Telly Hankton.  The indictment alleges that numerous defendants had a role in facilitating and concocting a false alibi for D.H. and Sana Johnson to use at trial.  See id. at 15.  The indictment further alleges that Netthany Schexnayder offered to pay Sana Johnson to falsely testify, which she allegedly did on July 28, 2011 at Telly Hankton's first murder trial.  See id. at 15-16.

- On or about October 15, 2011, Walter Porter shot and killed Curtis Matthews, the brother of J.M., who testified against Telly Hankton.  See id. at 16.

- On or about November 3, 2011, Shirley Hankton provided material false information to the federal grand jury.  See id. at 16.

The Court finds these allegations particularly worrisome; defendants have allegedly evaded prosecution, ordered the death of witnesses from inside jail, conjured perjured testimony and false alibis, and lied to a grand jury.  Moreover, and related to the fifth Krout factor, which is examined at length below, numerous media stories painted defendants as responsible for smashing a teal pickup truck into the entrance of the Orleans Parish District Attorney's office after Telly Hankton's first trial.[7]  These allegations support the Court's finding, under the second and third Krout factors, that defendants have made past

---

[7]  See John Simerman, Telly Hankton Network Targeted by Sweeping Federal Probe, NOLA.COM (Oct. 13, 2012), http://www.nola.com/crime/index.ssf/2012/10/telly_hankton_network_targeted.html.

attempts to interfere with the judicial process and witnesses, and that the defendants could be connected to a group with the capacity to harm jurors.  See, e.g., Brown, 303 F.3d at 602 (noting that the district court found that "several individuals in the case had proven their ability to corrupt the legal system" by witness tampering); Krout, 66 F.3d at 1428 (finding it significant that the defendants' interfered with potential witnesses, specifically noting that the defendants murdered or attempted to murder people suspected of informing the authorities); United States v. Perea, 625 F. Supp. 2d 327, 337 (W.D. Tex. 2009) (stating that the defendants had the capacity to harm jurors given their connection to a gang operation).

C.

The fourth Krout factor assesses the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties.  The Court finds that this factor is also present based on the fact that defendants, if convicted, face substantial sentences.  Moreover, the maximum penalty for five of the fourteen defendants may be life imprisonment or perhaps even the death penalty if the Department of Justice approves a capital sentence.  See Memorandum from Liz Privitera, Assistant United States Attorney, to Clerk of Court, Eastern District of Louisiana (Oct. 18, 2012) (attachment #1 to the superseding indictment).

*D.*

The fifth Krout factor, which considers the likelihood of extensive publicity that could enhance the possibility that juror identity would become public and expose jurors to intimidation and harassment, significantly affects the Court's decision to order an anonymous jury.  The media has already begun to dramatize this case and the charges against the defendants. Although this case is still in a relatively early stage, it has received considerable press coverage on a local and national level,[1] perhaps in part because the Mayor of New Orleans, Mitch Landrieu, has publically labeled Telly Hankton as "New Orleans' Most Dangerous" in press conferences.[2]  Pretial publicity, taken

---

[1] For a small sampling of media coverage, see Telly Hankton's Town:  A Murderer Sows Terror, Even from Jail, THE ECONOMIST (Nov. 5, 2011), http://www.economist.com/node/21536607; John Simerman, Hankton Family Reunion Takes Place in Federal Court, NOLA.COM (Oct. 5, 2012), http://www.nola.com/crime/index.ssf/2012/10 /hankton_family_reunion_takes_p.html; Brendan McCarthy & Paul Murphy, Feds: Hankton Organization Was Modern Day Crime Family, WWLTV.com (Oct. 19, 2012), http://www.wwltv.com /news/crime/Mother-of-convicted-murderer-Telly-Hankton-taken-into-custody-in-major-crime-roundup-174949311.html; Michael Kunzelman, Leader of N.O. Drug Ring Indicted, THE ADVOCATE (Oct. 21, 2012), http://theadvocate.com/news/4195097-123/leader-of-no-drug-ring; John Simmerman, Telly Hankton Hearing Is via Prison Video Because of Security Concerns, Station Reports, NOLA.COM (Dec. 5, 2012), http://www.nola.com/crime/index.ssf/2012 /12/telly_hankton_case_judge_order.html.

[2] John Simerman, Mayor Mitch Landrieu 'Sends a Message' to Telly Hankton and His Family at Site of Killing, NOLA.COM (Oct. 18, 2011), http://www.nola.com/crime/index.ssf/2011/10/new_orleans_ mayor_sends_a_mess.html ("I'm sending a message loud and clear to Telly Hankton and his family and anyone else associated with this: 'We're coming to get you.'").

alone, may not be a dispositive factor, but it certainly tilts in favor of having an anonymous jury.³  See Herrera, 466 F. App'x at 424 (affirming the district court's order for an anonymous jury in part because of the "probability of greater than usual media attention"); Brown, 582 F.3d at 602 (affirming the district court's order because of the "enormous local and national publicity surrounding the case"); United States v. Wong, 40 F.3d 1347, 1377 (2d Cir. 1994) (affirming the district court's order because the case had received significant print and broadcast coverage before trial and it was therefore reasonable for the district court to predict that additional media coverage would accompany the trial).

In conclusion, the Court finds that the totality of the circumstances demands anonymity in this case.  It is important to emphasize that the Fifth Circuit has held that "the use of an anonymous jury d[oes] not undermine the defendants' presumption of innocence."  Branch, 91 F.3d at 725.  Recognizing that the right to a fair trial is a central tenet in our judicial system, the Court will take positive and constructive steps to minimize any conceivable prejudicial effects associated with the use of an

---

³ In what is most likely to be a foreshadowing of the publicity ahead, local media published a story merely hours after the Court's status hearing in this case on December 5, 2012.  See John Simerman, Telly Hankton Case:  Judge Orders Anonymous Jury for Racketeering Trial, NOLA.COM (Dec. 5, 2012), http://www.nola.com/crime/index.ssf/2012/12/telly_hankton_case_judge_order.html

13

anonymous jury.  The Court finds that empaneling an anonymous jury will not compromise the defendants' fundamental rights, will recognize the reality of the grave charges made in this case, and will help ensure a fair trial.  See, e.g., Herrera, 446 F. App'x at 424 ("[D]uring its voir dire, the district court carefully queried the venire to ensure that no prospective jurors would be influenced by the anonymity and security measures."); Brown, 303 F.3d at 602-03 ("[T]he court's efforts to provide the defendants with sufficient information on the jurors through extensive juror questionnaires and voir dire adequately protected the defendants' rights and permitted them to select a jury intelligently."); United States v. Riggio, 70 F.3d 336, 340 & n.23 (5th Cir. 1995) ("Careful instructions were given to the jurors . . . . [t]his neutral explanation caused no unfair prejudice to [defendant]").[4]

New Orleans, Louisiana, December 7, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] The Court recognizes the seriousness of counsels' pause about the use of an anonymous jury and the temptation to fear that such a jury will presume guilt, not innocence, throughout the trial. That is not an unreasonable concern, and the Court is sensitive to it.  But the case precedent that guides this Court's decision also takes into account such considerations, and in the unique circumstances of cases such as the one before the Court, acknowledges the reality of the need for an anonymous jury.