UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

V.                                          NO. 12-01

TROY HANKTON                                SECTION "F"

ORDER AND REASONS

Before the Court is Troy Hankton's 28 U.S.C. § 2255 motion to vacate his sentence. For the following reasons, the motion is DENIED.

**Background**

Troy Hankton was one of many involved in the Hankton Group[1]—a criminal racketeering enterprise involved in murder, bribery, money laundering, and drug trafficking. He now seeks to vacate his sentence under 28 U.S.C. § 2255.

Troy Hankton was charged in Counts 1, 2, and 3 of a Third Superseding Indictment on June 19, 2014. Count 1 charged that Hankton engaged in a Racketeer Influenced and Corrupt Organizations Act conspiracy, in violation of 18 U.S.C. § 1962(d). Count 2 charged that Hankton knowingly and intentionally conspired

---

[1] The "Hankton Group" refers to the individuals involved in this criminal enterprise, including Telly Hankton, Nakia Hankton, Shirley Hankton, Thomas Hankton, Troy Hankton, Kevin Jackson, Walter Porter, Derrick Smothers, Terrell Smothers, and George Jackson.

1

to distribute 280 grams or more of crack cocaine, five kilograms or more of powder cocaine, one kilogram or more of heroin, and a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(D), and 846. Count 3 charged Hankton with conspiring to possess firearms during and in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o). On April 27, 2016, Troy Hankton pled guilty to Count 3, and the government dismissed Counts 1 and 2 pursuant to a plea agreement. Count 2 had a maximum of life imprisonment, and the maximum penalty for Count 3 is twenty years. The plea agreement allowed Hankton to avoid a life sentence. As part of his plea, Hankton signed a factual basis where he admitted to being a member of a violent criminal enterprise that distributed large quantities of narcotics. He also admitted to purchasing a handgun and shooting a man sitting in his car at a Red Rooster in furtherance of his role in the criminal enterprise.

Troy Hankton's Presentence Investigation Report calculated his guideline imprisonment range as 168 to 210 months. This was based on a base offense level of 33, which corresponds to the offense level for attempted murder, in connection with the Red Rooster shooting. The Probation Office applied a two-level enhancement under U.S.S.G. § 2A2.1(b)(1)(B) because the victim sustained serious bodily injury. Hankton's guideline range was 168 to 210 months. On October 12, 2016, the Court sentenced Hankton to

168 months imprisonment. After his sentence was imposed, Troy Hankton's counsel filed a notice of appeal on October 14, 2016. He moved to dismiss his appeal on January 20, 2017, and the Fifth Circuit issued an order dismissing the appeal the same day. He filed this motion to vacate pursuant to 28 U.S.C. § 2255 on December 11, 2017. The government submitted its Court-ordered response on February 23, 2018.

I.

A petitioner may file a habeas corpus petition pursuant to 28 U.S.C. § 2255, claiming a right to release from custody on the ground that a sentence ordered by a federal court "was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255.[2] "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996)(citations and internal quotation marks omitted). A claim of error that is neither constitutional nor jurisdictional is not cognizable in a

---

[2] Section 2255 identifies only four bases that might support a motion to vacate: (1) the sentence was imposed in violation of the Constitution of laws of the United States; (2) the Court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." Id.

3

section 2255 proceeding unless the error constitutes a "fundamental error" that "renders the entire proceeding irregular or invalid." United States v. Addonizio, 442 U.S. 178, 185 (1979).

The Court "may entertain and determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C. § 2255. Having considered the record, the motion, and the government's response, the Court finds that the record is adequate to address the petitioner's claims and to dispose of them as a matter of law. Accordingly, no evidentiary hearing is necessary. See United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995)("if on th[e] record we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary....").

A habeas petitioner has the burden of establishing his claims by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980)(citations omitted). If the Court finds that the petitioner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

II.

Troy Hankton seeks habeas relief on the following grounds: (1) his counsel was ineffective; (2) the Court incorrectly applied a sentencing enhancement under the United States Sentencing Guidelines for conduct that the defendant was not convicted of; (3) the U.S. Attorney's office was guilty of prosecutorial misconduct; (4) the government breached the plea agreement by seeking a sentencing enhancement; (5) he did not plead guilty to crimes necessary to warrant his conviction under 18 U.S.C. § 924(o), which makes it illegal to use or carry a firearm in relation to any crime of violence of drug trafficking crime; and (6) that Sessions v. Dimaya may apply to his case. The Court first turns to whether Hankton's claims are actionable.

A.

A petitioner may file a habeas corpus petition pursuant to 28 U.S.C. § 2255 claiming that a sentence imposed by a federal court "was imposed in violation of the Constitution or the laws of the United States." Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner has one year within which to file his habeas corpus claim. 28 U.S.C. § 2255. This one-year period runs from the latest of:

    (1)   the date on which the judgment of conviction becomes final;
    (2)   the date on which the impediment to making a motion created by governmental action in violation of the

5

          Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. If a petitioner fails to file his Section 2255 motion within the applicable one-year period, the Court must dismiss the petition as untimely.

The government contends that Hankton's motion must be dismissed because it was filed more than one year after his conviction became final. It contends that his conviction became final on October 27, 2016, fourteen days after his sentencing, but he did not file his motion to vacate until more than one year later, on December 11, 2017. And that the government mistakenly states that Hankton did not file a notice of appeal within the fourteen-day window after sentencing, pursuant to Federal Rule of Appellate Procedure 4, and thus the sentence became final on October 27, 2016. Hankton filed a notice of appeal on October 14, 2016, but was dismissed on January 20, 2017 with Hankton's consent. Hankton did not file any subsequent motion for certiorari. Regardless, his sentence became final upon the expiration of the ninety-day window to seek certiorari review, April 20, 2017. See United States v. Gamble, 208 F.3d 536, 537 (5th Cir. 2000)(holding

6

that a defendant's sentence became final ninety days after the Fifth Circuit dismissed the defendant's appeal for want of prosecution, even though the defendant did not seek certiorari review); see Clay v. United States, 537 U.S. 522 (2003). Hankton's motion to vacate was timely.

B.

Hankton waived his right to challenge his sentence, except to the extent that he claimed he received ineffective assistance of counsel. Hankton's plea agreement provides that "the defendant . . . knowingly and voluntarily . . . [w]aives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Section 2255 . . . . The defendant specifically does not waive and retains the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum. The defendant also retains the right to raise a claim of ineffective assistance of counsel in an appropriate proceeding."

The Fifth Circuit held in United States v. Wilkes that a defendant can waive his right to appeal his sentence under 28 U.S.C. § 2255 in a plea agreement, as long as the waiver is informed and voluntary. 20 F.3d 651, 653 (5th Cir. 1994). For a waiver to be informed and voluntary, the defendant must understand the consequences of the waiver. United States v. Baty, 980 F.2d 977, 979 (5th Cir. 1992). Namely, "that [defendant] had a right to

appeal his sentence and that he was giving up that right." United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994) (quoting United States v. Melancon, 972 F.2d 566, 568 (5th Cir. 1992)). A defendant's statement at his guilty plea hearing that he understood and voluntarily approved of his plea is persuasive because "[s]olemn declarations in open court carry a strong presumption of verity." Wilkes, 20 F.3d at 653 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Cantu, 273 F.3d 393, at *1 (5th Cir. 2001). In determining whether the waiver was informed and voluntary, the reviewing court will consider whether the court addressed the waiver provision in the hearing and if the defendant asked any questions about it. See Cantu, 273 F.3d at *1. But if the defendant read and understood the plea agreement and did not ask about the waiver, the defendant "will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." During his plea hearing, Hankton repeatedly stated that he understood the charges against him, understood the legal consequences of pleading guilty, and that he understood his plea agreement. He stated that he did not have any questions and that his attorney had explained to him the contents of the plea agreement. Hankton affirmed that his guilty plea was made knowingly, intelligently, and voluntary, and

he must be held to the bargain that he made.[3] Therefore, he cannot challenge his conviction, the Court's application of the sentencing enhancement, the government's advocacy for that sentencing enhancement, or the government's alleged misconduct in the plea agreement. However, he reserved the right to raise a claim of ineffective assistance of counsel.

IV.

Troy Hankton contends that his counsel was ineffective because she had a conflict of interest by: (1) counseling him to sign an ambiguous plea agreement and (2) representing him even though she had been an AUSA for twenty years. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal

---

[3] Even if Troy Hankton did not waive the right to attack the sentence under section 2255, his claim that the Court misapplied his sentencing enhancement still would not prevail because it is not an actionable claim under section 2255. "A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255." United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995). Instead, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Acklen, 47 F.3d 729, 741 (5th Cir. 1995). "Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable under § 2255 motions." United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). Accordingly, even if the Court were to misapply the Sentencing Guidelines, 28 U.S.C. § 2255 would not be the appropriate avenue to seek relief for that injury.

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. Art. VI. The Sixth Amendment guarantees a criminal defendant "reasonably effective assistance" of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

To demonstrate that counsel has been ineffective, the defendant must show: (1) that counsel was deficient; (2) that "the deficient performance prejudiced the defendant." Id. at 687. Counsel is defective if they "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment," meaning that representation cannot fall "below an objective standard of reasonableness." Id. at 687-88. However, a strategic decision made after reasonable consideration of the law and facts is not challengeable. Id. at 690. "[C]ounsel does not need to raise every nonfrivolous ground of appeal available." United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (quoting Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (internal quotations omitted). A defendant is

prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The defendant must show that there is a substantial likelihood of a different outcome. United States v. Wines, 691 F.3d 599, 604 (5th Cir. 2012).

Hankton claims that his counsel was ineffective because she had previously practiced as an Assistant United States Attorney for twenty years. He claims that she was "loyal" to the AUSA's office and that her history there clouded her judgment. However, the defendant fails to point to any specific conduct that suggests that she was using her position to do anything but advocate for the defendant.

Hankton also contends that his counsel was ineffective because she counseled him to sign an ambiguous plea agreement. He contends that the plea agreement was ambiguous because it waives his right to collaterally challenge his plea, conviction, and sentence, but simultaneously preserves his right to raise an ineffective assistance of counsel claims. He asserts that by waiving his right to challenge his sentence, he waives his right to raise an ineffective assistance of counsel claims, despite the provision specifically preserving his right to bring that claim. Hankton submits that this so-called contradiction makes the plea agreement ambiguous. He alleges that his counsel advised him to

sign a plea agreement which immunizes her from an ineffective assistance of counsel claim. His argument is without merit.

Hankton is mistaken. When he knowingly, voluntarily, and intelligently agreed to the plea agreement, he agreed to waive his right to collaterally attack his sentence under 26 U.S.C. § 2255 *except* to challenge his sentence for ineffective assistance of counsel or a sentence imposed in excess of the statutory maximum. The provisions waiving his right to challenge the sentence and carving out an exception to assert an ineffective assistance claim are not ambiguous or contradictory. Hankton's counsel did not hold herself harmless by counseling him to sign the agreement. On the contrary, the agreement she counseled him to sign explicitly protects his right to assert a claim against his counsel. The plea agreement is not ambiguous, and Hankton's counsel was not deficient in counseling him to sign the agreement. In fact, Hankton's counsel provided effective counsel by counseling him to agree to the plea agreement, because it reduced his possible maximum sentence from life in prison to twenty years. Hankton knew full well the consequences of his plea agreement and said so under oath. Hankton does not assert a valid ineffective assistance of counsel claim.

V.

Lastly, Hankton contends in two supplements to his motion to vacate that the provision he pled guilty to, 18 U.S.C. § 924(o),

is unconstitutionally vague. He asks the Court to consider <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 1210 (April 17, 2018), in which the Supreme Court held that a definition of "crime of violence" in the Immigration and Nationality Act is impermissibly vague.

Troy Hankton pled guilty to 18 U.S.C. § 924(o), which provides: "A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life." Subsection (c) prohibits the use of a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). A "crime of violence" is "any offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3).

Under the Armed Career Criminal Act, a defendant convicted of being a felon in possession of a firearm faces a more severe punishment if he has three or more previous convictions for a "violent felony." <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2555 (2015). In <u>Johnson v. United States</u>, the Supreme Court held that

13

part of the definition for "violent felony," the part referred to as the residual clause, is unconstitutionally vague. The relevant provision of the ACCA read as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) **is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another**.

18 U.S.C. § 924(e)(2)(B)(emphasis added). The bold second clause is the residual clause. The Court held that the defendant sentenced under that clause was denied due process of law. Johnson, 125 S. Ct. at 2557. In Session v. Dimaya, the Court applied the logic of Johnson to find that the residual clause of the definition of "crime of violence" in the Immigration and Nationality Act is also unconstitutionally vague. The provision at issue stated:

> The term "crime of violence" means—
>
> > (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The first part of the definition is referred to as the elements clause, the second part, Section 16(b), is the residual clause. Dimaya, 138 S. Ct. at 1211. Again, the Court only

took issue with the residual clause, and held that it was unconstitutionally vague. Id. at 1213-16.

Hankton pled guilty to the use of a firearm during a crime of violence or drug trafficking crime. Like the statute in Dimaya, Section 924(c)(3) defines "crime of violence" with an elements clause and a residual clause. The residual clause in Section 924(c)(3) is nearly identical to the residual clause found unconstitutional in Dimaya. If the residual clause in Section 924(c)(3) was found unconstitutional, Hankton's conviction may have violated due process if he had been sentenced under the residual clause.[4] But even if Hankton was convicted under the residual clause of Section 924(c)(3)'s crime of violence definition, neither the Fifth Circuit nor the Supreme Court has held that that clause is unconstitutionally vague. United States v. Williams, 897 F.3d 660, 662 (5th Cir. 2018)(acknowledging that the Supreme Court has held that Section 16(b) is unconstitutionally vague, "but it has made no predicate holding vis-à-vis

---

[4] It is not specified in the plea agreement or sentencing papers if Hankton was convicted for use of a firearm during a crime of violence or a drug trafficking crime. During the rearraignment, the Court informed Hankton that the government must prove that he used a firearm in connection to a drug-trafficking crime or a crime of violence, but does not specify which is being charged. However, Hankton admitted to doing both in the factual basis. Hankton used a handgun to shoot a man in the Red Rooster parking lot in furtherance of his participation in a drug-trafficking enterprise. The shooting itself was a crime of violence. If it isn't, one wonders what is.

15

§ 924(c)(3)); see Dimaya, 139 S. Ct. at 1241 (Roberts, C.J., dissenting)("express[ing] no view" as to whether the Supreme Court's Dimaya holding that 18 U.S.C. § 16(b), a similarly worded provision, is impermissibly vague compels the same results regarding 18 U.S.C. § 924(c)(3)). The Fifth Circuit has held that the Supreme Court's decision in Dimaya has not created a "newly recognized" right for defendants sentenced under the residual "crime of violence" definition of Section 924(c)(3), and that "Section 924(c)(3) remains valid." Williams, 897 F.3d at 662. Accordingly, Dimaya does not currently affect Hankton's conviction.

Accordingly, IT IS ORDERED that Troy Hankton's motion to vacate his sentence is DENIED.

New Orleans, Louisiana, August 30, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE