UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

v.                                          NO. 12-1

TROY HANKTON                                SECTION: "F"

ORDER AND REASONS

Before the Court is Troy Hankton's *pro se* motion for a sentence reduction or release on home confinement. For the reasons that follow, the motion is DENIED.

**Background**

For over a decade, Troy Hankton dealt drugs and acted as a "gunman" for the Hankton Group—a New Orleans-based racketeering enterprise whose members murdered, bribed, laundered money, and sold drugs. Hankton's duties apparently included shooting patrons of local snowball stands. But Hankton now says he is a "nonviolent offender," and he seeks a sentence reduction or release on home confinement. Neither is appropriate.

In summer 2014, a grand jury returned a third superseding indictment charging Hankton with three felonies. Count one charged him with engaging in a Racketeer Influenced and Corrupt Organizations Act conspiracy, in violation of 18 U.S.C. § 1962(d).

1

Count two charged him with knowingly and intentionally conspiring to distribute 280 grams or more of crack cocaine, five kilograms or more of powder cocaine, one kilogram or more of heroin, plus a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(D), and 846. And count three charged him with conspiring to possess firearms during and in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o).

Almost two years later, in spring 2016, Hankton pleaded guilty to count three. In exchange, the government dismissed counts one and two. Hankton was fortunate. For count two carried a maximum penalty of life imprisonment; the plea allowed him to avoid a life sentence. As part of his plea, Hankton admitted that he belonged to a violent gang that sold drugs. He also admitted shooting a man at a snowball stand to further the gang's objectives.

Hankton's Guidelines imprisonment range was 168 to 210 months. His base offense level was 33, the offense level for attempted murder, because of the snowball-stand shooting. The Probation Office applied a two-level enhancement under Guidelines § 2A2.1(b)(1)(B) because the victim of the shooting sustained serious bodily injury.

In fall 2016, the Court sentenced Hankton to 168 months imprisonment. Hankton is now housed at Federal Correctional

Institution Oakdale I, and his projected release date is December 5, 2023. He is 35 years old and, according to his medical records, in relatively good health.

In spring 2020, Hankton filed with the Bureau of Prisons a request for home confinement and compassionate release. He said that, because he has epilepsy, and COVID-19 "attacks your lungs," he is "at serious risk." The Bureau of Prisons disagreed. It denied the request for home confinement because Hankton was convicted of a crime of violence, and it denied the request for compassionate release because Hankton "did not meet the criteria."

Now, Hankton moves for a sentence reduction or release on home confinement due to COIVD-19 concerns. His *pro se* motion is unhelpful; it contains no case-specific reasons supporting the relief he requests. In a later filing, however, Hankton claims to suffer from epilepsy and high blood pressure—conditions that, in his view, place him at a greater risk of succumbing to COVID-19.

I.

First, Hankton moves for a sentence reduction under 18 U.S.C. § 3582(c)(1).[1]  He is ineligible for one.

A.

Applied here, § 3582(c)(1) is straightforward.[2] The Court may reduce Hankton's prison term based on two findings: (1) "extraordinary and compelling reasons warrant" a reduction; and (2) a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[3] In so finding, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." Id. Hankton, as the movant, must show that a § 3582(c) sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). He has not done so.

---

[1] The First Step Act of 2018 amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. See Pub. L. No. 115-391, 132 Stat. 5239. Before the amendment, only the Director of the Bureau of Prisoners could move for compassionate release.

[2] The administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) is met because 30 days have passed since the warden of Federal Correctional Institution Oakdale I received Hankton's request for compassionate release or home confinement.

[3] Hankton is ineligible for relief under sub-section (ii) because he is not "at least 70 years of age," and he has not "served at least 30 years in prison[.]" 18 U.S.C. § 3582(c)(1)(A)(ii).

1.

To begin, no "extraordinary and compelling reasons" warrant a reduction of Hankton's sentence. Three types of reasons can be "extraordinary and compelling":(1) a medical condition; (2) age; and (3) family circumstances. U.S.S.G. § 1B1.13, Application Note 1. Hankton invokes only the first type—a medical condition.

A defendant's medical condition can be an "extraordinary and compelling reason" if it is a "terminal illness." U.S.S.G. § 1B1.13, Application Note 1(A)(i). Hankton's alleged medical conditions—epilepsy and high blood pressure—are not "terminal illness[es]."

A defendant's medical condition can also be an "extraordinary and compelling reason" if:

(1) The defendant

    (a) suffers from "a serious physical injury or medical condition";

    (b) suffers from "a serious functional or cognitive impairment"; or

    (c) experiences "deteriorating physical or mental health because of the aging process"; and

(2) The injury or condition or deterioration in mental or physical health "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover."

U.S.S.G. § 1B1.13, Application Note 1(A).

Hankton does not identify a "functional or cognitive impairment" or a deterioration in health due to aging. Nor can he. He is 35, and his medical records show no impairments—functional or cognitive. He appears to contend, however, that his epilepsy and high blood pressure are "serious medical conditions" that combine to create an "extraordinary and compelling reason" for a sentence reduction. He is mistaken.

The Center for Disease Control and Prevention has identified seven conditions that place a person at an increased risk of developing a severe illness from COVID-19; epilepsy and high blood pressure are not among them. See Centers for Disease Control and Prevention, Who Is At An Increased Risk of Severe Illness? (June 27, 2020), https://www.cdc.gov/coronavirus/2019-nCoV/index.html. Although hypertension is one of the conditions that "*might*" place a person at an increased risk of developing a severe illness from COVID-19, id. (emphasis added), Hankton's medical records do not support a finding that his hypertension is severe enough to constitute an "extraordinary and compelling reason" for a sentence reduction. And, tellingly, Hankton did not mention his alleged hypertension when he requested compassionate release from the Bureau of Prisons; he mentioned only epilepsy. So the Court rejects Hankton's contention that his alleged hypertension and epilepsy qualify as "serious medical conditions." U.S.S.G. § 1B1.13, Application Note 1(A).

6

Even if the Court credited the contention, however, Hankton's alleged conditions would not combine to create an "extraordinary and compelling reason" for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). That is because Hankton offers neither argument nor evidence to support a finding that his alleged conditions "substantially diminish" his ability "to provide self-care within" the prison. U.S.S.G. § 1B1.13, Application Note 1(A).

Accordingly, Hankton fails to show that "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). He is thus ineligible for a sentence reduction under § 3582(c).

2.

Even if Hankton could show "extraordinary and compelling reasons," however, the Court would deny his request. For reducing his sentence is *not* "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A).

The "applicable policy statement[]" is United States Sentencing Guidelines § 1B1.13. It says that a court cannot reduce a defendant's sentence under § 3582(c)(1)(A) unless the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community[.]" U.S.S.G. § 1B1.13(2).

The Court cannot so find here. Hankton is a 35-year-old veteran drug dealer and "gunman" who admitted shooting a man at a

snowball stand. In support of his claim that he is no longer dangerous, Hankton offers only empty assurances and mischaracterizations of his criminal history. That will not do.

Because Hankton fails to show that he "is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), the Court finds that granting Hankton a sentence reduction would not be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). Consequently, Hankton is ineligible for a sentence reduction on this independent ground.

* * *

No "extraordinary and compelling reasons warrant" a reduction of Hankton's sentence. 18 U.S.C. § 3582(c)(1)(A). And granting him a reduction would clash with "applicable policy statements issued by the Sentencing Commission." Id. The Court therefore denies Hankton's request for a § 3582(c)(1)(A) reduction. Having rejected Hankton's first request, the Court turns to his second.

II.

Next, Hankton moves the Court to release him on home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281. The Court declines.

8

A.

The Court lacks the power to place Hankton on home confinement; that power belongs to the Bureau of Prisons alone. See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]").

The CARES Act allows the Director of the Bureau of Prisons to "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" if "the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau[.}" CARES Act, § 12003(b)(2). The Attorney General has so found. See William P. Barr, Memorandum for Director of Bureau of Prisons (Apr. 3, 2020).[4] So the Director of the Bureau of Prisons may "lengthen the maximum amount of time for which" he may place Hankton on home confinement, CARES Act, § 12003(b)(2), but this Court may not. See 18 U.S.C. § 3621(b). The Court therefore denies Hankton's request for release on home confinement under the CARES Act.

---

[4] Available at https://www.justice.gov/file/1266661/download.

III.

Hankton does not qualify for a sentence reduction under 18 U.S.C. § 3582(c), and the Court is without power to order that he be released on home confinement under the CARES Act. Accordingly, IT IS ORDERED: that Hankton's *pro se* motion for a sentence reduction or release on home confinement is DENIED.

New Orleans, Louisiana, July 1, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE